United States v. Bald or Balding. Good morning, Your Honors. Matt Larson of the Federal Defenders for Mr. Baldy. Your Honors, as Judge Vela noted, this is a very, very unique case. In most cases of 922G5 charges being brought, the alien had snuck into this country or overstayed a visa and thus had entered illegally. Here, however, Mr. Baldy came back to the United States with his advance parole in hand, believing in good faith that he had authorization to come back. Upon landing, he was told he didn't. His authorization had been revoked in his absence and without giving him notice and without the opportunity for him to go back. He was ultimately ordered removed, right? All this behavior that's at issue after he's been ordered removed, right? So is he legally in the United States at that point? He is because he has parole status, Your Honor. But as of December 2008, there was a final order of removal. And the fact that they allowed him out on supervised release, how does that mean that he was lawfully here in the United States? It's not supervised release, Your Honor. It's parole pursuant to Section 1182D5. The Immigration Service back in the old days when some of us were practicing would take the position, and I'm sure HHS does as well now in our current environment, that when you are paroled in, you are not here. Legally. There's no admission. You're not here, period. I mean, you're present, but somehow we don't acknowledge that you have any right to be here. We're just letting you in while we figure out what we're going to do with you. That's right. And how is that different from the situation your client finds himself in? That point goes to our principal argument, which is that Mr. Baldy is not in the country within the meaning of the statute. The statute's been construed to require the in to require an entry as a matter of immigration. But that's not construed by us, right? That's true. It's construed by the Ninth Circuit on facts that are rather different than these. Facts that are not materially different, Your Honor. Why not? In that case, the guy comes to the United States with a gun and is basically turned away at the border. So the Ninth Circuit said the statute does not say it's a crime to come to the United States with a gun. Mr. Baldy did not come to the United States with a gun, as far as we know, ever. He got a gun after he's in the United States, after he was ordered removed. So that's a rather different situation, isn't it? The point on which Lopez was decided was a legal point. The court said Mr. Lopez is in the United States. He's on U.S. soil. Right. Although it's at the border. And the question is, is that a correct decision? We have to make our own decision about this. That's right. But they made a decision under facts that were somewhat compelling in a very different way than these are. I think — It might have led them astray. To read the in to require an entry under immigration law is the proper reading of the statute. To do — to require an entry is a safeguard. If physical presence is all that is required, then the government can bring someone into this country in handcuffs, as in the Macias case, and if that person later possesses a weapon, he's liable. Well, if he later possesses a weapon, yes. Right. But it's also — it's a safeguard. Why is that? I mean, that's not — that's a very different thing than he had the gun when they brought him in in handcuffs, and he made no voluntary choice to have a gun. Mr. Baldy made no — The question is, did Congress mean that people in Mr. Baldy's situation should be allowed to have guns? Now, that is — Excuse me, please. Should be allowed to have guns when people who overstayed a tourist visa should not be allowed to have guns? Your Honor — Not the choice that Congress made. That's the question before us. That's an excellent question, and it is not at all clear that Congress intended this statute to apply to someone like Mr. Baldy. Mr. Baldy is not here voluntarily. When he landed at JFK, he was jailed for two years. Why does that matter, whether he's here voluntarily? He could be here for any number of unfortunate circumstances. The question is, if he is not here legally, Congress has forbidden him to have a gun, and he makes a choice to have a gun. There's nothing involuntary about that. That's correct. So why does the fact that he may have been unable to exit the country entitle him to buy a gun if he has no legal status here? If the court — let's talk about whether he's here lawfully, whether he has status. Our position is that he has parole status. When he was released from custody, the only provision of law that authorized his release was the parole regulation. And it's well established in the case law that when an individual has parole status, he is here lawfully. Mr. Baldy was allowed to work. He has paid taxes to this country. He has raised his children here. He is legally present. His presence is not a crime in the community, right? The government says, oh, he didn't actually have parole. He had this thing called supervised release. But if you look at the statute they cite, that statute by its terms is not applicable to Mr. Baldy because it only kicks in after the removal period has ended. Now, the removal period in Mr. Baldy's case began one year after he was released on parole. By its terms, the provision they cite does not apply to Mr. Baldy. The only provision that does as a matter of law is the parole provision. And the case law is clear, the Cruz-Miguel case from this court, that parole is lawful presence. Now, this is a very — Let's just be clear, and this is an interesting point. This is not a case of somebody who arrives at the border and is then told, you are paroled into the United States. Don't count on anything. We're still deciding whether to admit you. But you are allowed to be here on parole. This is a case where he was effectively released on the equivalent of bail, but you're saying the government wasn't allowed to do that. They made a mistake by saying that because the only thing that would have allowed them to let him out of detention is parole. Was he ever told this is parole, or was there a determination that you can point to that says he is paroled into the country? No, I want to make this point very clear. The government says, well, ICE, when they let him out, they call it this ISAP program that they created, I-S-A-P. And they think that it's supervised release. This is a court of law, and ICE is a law enforcement organization. It doesn't matter what label ICE uses when they let someone out. The only provision of law that authorized Mr. — in fact, required Mr. Baldy's release. And you're sort of arguing they should stop that program. No, I'm not, Your Honor. It was required under the regulation we've cited, 8 CFR 212.5E1 — excuse me, E21. It says if a removal order cannot be executed within a reasonable time, the alien shall be released on parole. There's documentation when he's released saying he's litigating this in the Second Circuit. Also, we've tried to get him out of the country, and we can't. We have no idea if we can execute this order or not. Release him. That is the regulation pursuant to which he was released. The regulation they cite does not even come into play until a year and a half later when the removal period ends. The thing they're hanging their hat on is a red herring in this case. He was released on parole. And parole — When did he possess the gun? Within that year and a half period? Years later. Years later. He was released on parole, and parole status is lawful status. And that's why this case is different from all of the cases they cite in the other circuits. None of those individuals had parole. They had all snuck in illegally or overstayed a visa. They did not come in in good faith and then find themselves in this Kafkaesque trap that they can't get out of. They did not have parole. Mr. Baldi does. It is the only legal provision by which he could have been and had to, in fact, have been released. And because he has that status, he is not here unlawfully. Is he here lawfully? He is here lawfully, Your Honor, because parole status is lawful status. And because this is an unusual case, to say the least, and this fact pattern has not really popped up before, if there is a question of doubt here, Your Honors, the rule of lenity does require a construction in Mr. Baldi's favor. And as we say, though, in our brief, we don't actually have to resort to lenity because there's an on-point regulation. The government says, oh, the regulation doesn't apply because the removal order had already been entered. But that doesn't make any sense, Your Honors. Because by the government's reading then, a person can be held forever as long as they're detained before the removal order is issued. Your Honors, it doesn't matter when the removal order is issued, whether it comes before or after the person is jailed. The point is, too long confinement is too long confinement. When it is clear that the person's removal order, whenever it's entered, cannot be executed within a reasonable time, this regulation requires release on parole, and parole is a lawful status. The government has cited no authority to the contrary. And what's the — under that — in that scenario, what's the status of the removal order? The removal order is, in effect, such that if the government or Mr. Baldi can ascertain a travel document to Guinea, he will leave. And they will — and he's tried at every point to leave. They say when they booked him on the flight that, for unknown reasons, they never put him on. They said he was willing to return. He went to the consulate, tried to get his passport renewed. They wouldn't give him a new passport. The government held on to it until after it expired. If it becomes feasible for him to leave, he will leave, and he'll be under an order to leave. But while he's here — Well, he's already under an order to leave, right? Yes. It will be executed if feasible. The only reason why he's still in the country is they haven't been able to effectuate what was ordered in 2008, right? Correct, Your Honor. And the regulation says in exactly this situation, the person is, quote, released on parole. Parole is lawful status. The government cites no case to the contrary. And are there cases that say that? Many. They're all in our briefs. Cruz Miguel is the Second Circuit case, Your Honor, where it distinguished conditional parole, which is what, say, someone sneaks in and they're caught. And they're put in removal proceedings. And they say, okay, we'll let you out on bond. We'll give you conditional parole. This Court said that's not really parole that we're talking about. That's not formal parole. They contrasted it to the parole that Mr. Baldy received when he was released pursuant to this regulation. The regulation is based on Section 212 of the Immigration Act, and that is the relevant section that all the courts have said is lawful presence. Thank you, Mr. Larson. You've reserved two minutes for rebuttal. Ms. Tarlow? Good morning, Your Honors. My name is Eleanor Tarlow, and I represent the United States. The statute at issue here uses the word in to refer to physical presence. That's the plain meaning of the word. It is consistent with congressional intent. It is consistent with common sense. The appellant attempts to sidestep that requirement by arguing that physical presence is not enough. Can we talk about the unlawfully part? Yes, Your Honor. What exactly is Mr. Baldy's status? The argument is he has been paroled into the United States. Your Honor, I don't believe that the argument is that he was paroled into the United States. I think the parties agree that his grant of advanced parole was terminated at the time he arrived. What happens when he's let out? Your Honor, it is our understanding that he was let out on supervised release. That is the district. Where is that term? Excuse me, Your Honor? Where is that term, supervised release? We see it a lot, as you all know, when sentences are imposed. That's what happens after you get out of prison. Your Honor, it was what the defendant requested. It was what ICE granted. They issued a notification that he was being released on supervised release. So if he had used the word parole, then we'd be having a different discussion? Your Honor, ICE specifically said that the defendant was being put on supervised release and imposed certain obligations consistent with that. The district court reviewed the record. Where is the document in the record that we can look at that says the exact terms on which he is released, if it is in the record? Yes, Your Honor. It is docket number 30-2 at 13, as well as docket 30-2 at 5. On December 2007, ICE determined that the defendant could be released under the intensive supervision appearance program. I'm looking in the appendix. It's not on the appendix, Your Honor. It's on the district court record. Why don't we have it? Or let me ask it this way. Please, after you leave here and go back to your office, would you please provide copies of that? Yes, Your Honor. Thank you. But you're just trying to understand what this status is. Mr. Larson says there is no such thing as supervised release, that the only regulation that authorizes release is the parole status. Your Honor, there is authority to release an individual under supervised release. That is at 8 CFR 241.14. We concede that that is not a perfect procedural posture in this case because supervised release generally is granted to individuals 90 days after, in this case, a final order of removal has been entered. Having said that, the record is clear, and Judge Fala made an explicit factual finding based on the record that ICE did release the defendant under supervised release. There is nothing in 8 CFR 241. . . So you're saying, at worst, this was an error, that he was released too soon under that regulation? It was not an error, Your Honor. There is authority for ICE to place someone on supervised release. It is at their discretion. It is not procedurally perfect with the statute that was cited in the ICE document? When you say it's not procedurally perfect, I'm trying to understand just what you're talking about. Mr. Larson says he may be totally wrong, but you see, you're going to have to persuade me that he's wrong or let me find out for myself by looking at the regulations and the documents. You say it's not procedurally perfect. What do you mean by that? I mean that the regulation that was cited by ICE upon his release states that the defendant can be released after a 90-day period after a final order of removal had been entered. I see. So are you telling me they cited the wrong regulation? They cited a regulation that does not explicitly define the circumstances at issue here, but it certainly does not preclude them. The regulation authorizes something. That something didn't exist here, but they let him out anyway, citing that regulation. Correct, Your Honor. Now are you telling me there is another regulation that they did not cite that authorizes supervised release under the circumstances in which Mr. Balde found himself? No, Your Honor. There is not a separate regulation. Okay, so in other words, you are telling me that he was released pursuant to a regulation that does not permit his release. Your Honor, it's a slight parsing of words. It's not that it does not permit his release. It doesn't provide the explicit authority. Well, is there a regulation, following up on what Judge Lynch is asking, that does authorize Mr. Balde's release under the circumstances we have here? And if the answer to that question is yes, which regulation is it? There is not an explicit regulation that authorizes under the circumstances here unsupervised release. Okay. Now, so there is a regulation that would authorize the release of someone in Mr. Balde's situation on parole. That's what Mr. Larson says. Is that wrong? Yes, that is wrong, Your Honor. We disagree with that. The section that he— Was the answer you just gave also the answer to my question? Your Honor— I was trying to ask the same question that Judge Lynch, in his usual fashion, put more eloquently or more precisely than I did. But your answer just now to his question was the answer you intended for my question. Your Honor— Or that I intended to try to get from you for my question. Yes, Your Honor. Under 8 CFR 212.5, we do not think that the appellant would qualify. That is a section that applies to individuals who are paroled into the United States. The defendant was never paroled into the United States. His grant of advanced parole was revoked, and therefore this does not apply. Further, we submit to the court that you do not need to determine whether or not he was released on parole or supervised release. Under any condition, the defendant did not have lawful status here. He was subject to a final order of removal, and he therefore was unlawfully or illegally in the United States. Judge Falo, based on the record before the court, determined that the defendant had been released on supervised release. Well, what happens, you know, we actually encounter this quite often in the immigration docket in the court, that somebody is ordered removed, and it comes to us, you know, 10 years later on a motion to reopen because the guy is still wandering around in the country, and he's not wandering around in the country because he escaped the attention of ICE. He's wandering around because ICE is unable to remove, or ICE or whoever is responsible in the department, is unable to remove him for reasons like this. The country to which he's supposed to go doesn't give him travel documents. Now, what is that person's status in your view? That person is illegally in the United States, notwithstanding that the United States lets him be here, may let him work. Apparently that was the case with Mr. Balde. He had a work authorization, but he's still illegally here. He's unlawfully here. Is that the position? Your Honor, we've cited several cases in our brief, page 23 through 25, from the Fifth Circuit, the Ninth Circuit, and the Tenth Circuit, in which courts found uniformly that a defendant is illegally or unlawfully in the United States even if removal proceedings are pending. Even if they have work authorization, even if deportation proceedings are stayed, if removal proceedings are pending, that they are unlawfully or illegally in the United States. So long as he does not have a visa, a valid authorization to be in the United States. No lawful status, Your Honor. No lawful status. Here. Even if that person is paroled. The cases that we cited do not deal with parole, Your Honor. Well, are there cases about people who are paroled in the more normal circumstances, I understand it, where someone has said, well, you can wander around here, but you still have to come back, and once we decide that you're inadmissible, you have to go? The only case . . . That kind of parole. Yes, Your Honor. The only cases that the defense has cited in the Fourth and Fifth Circuit refer to grants of advance parole. That is not the case here. The defendant is not here on a grant of advance parole. It is fundamentally different in that the defendant arrived, he did not have any authority to come into the United States, he was clearly unlawfully here, a final order of removal was entered, and then he was released from custody because the Supreme Court has determined that we cannot detain an individual indefinitely. That does not transform . . . decision not to keep him in prison. He is now not incarcerated. He is free to move around, but he still has no lawful status. That's the position. Exactly, Your Honor. It does not transform his lawfulness of being here. It does not change his final removal order. It merely means that he is released from detention. And the ultimate question under the criminal statute is whether Congress intended to prohibit the possession of firearms by someone in that kind of situation. Yes, Your Honor. Someone who the United States has determined cannot lawfully be here. Can all persons in the circumstance that we've been discussing engage in work lawfully? There are cases, Your Honor, the Fourth, Fifth, and Ninth Circuit that cited where individuals have received some kind of work authorization and their removal proceedings are pending, and those courts have found that they are illegally and unlawfully in the United States. I'm sorry, just repeat the last part of what you said. That the courts have found that those individuals who have work are . . . Are unlawfully here. Yes, Your Honor. Okay, thank you. The Court has no further questions. We rest on our brief. Thank you very much, Ms. Tarlow. Mr. Larson. It's tricky stuff, Your Honors. This is complicated stuff. I would like to try to clarify if possible. I'm not sure if Your Honor was asking this, but Mr. Baldy was not mistakenly released. It wasn't an error that he was let out. No, they intentionally released him. The question you're saying that the only way they would be allowed to release him is by giving him a particular status. And maybe if that's true and they understood that, they wouldn't have let him out. The mistake, if there's any mistake, is they seem to have thought that they could release him under this regulation that was cited, and they cited that as the basis for letting him out, apparently, that does not, in fact, apply. That may be the mistake. And you're saying, therefore, we should treat him as someone paroled into the country. He has been paroled because the only authority for letting him out of jail was the parole regulation, 212.5E21. But they didn't cite that regulation. They cited a different regulation. It doesn't matter what they cite, Your Honor. Why not? Because it's what the law provides. If the only way to let this man out of jail, if the only thing authorizing his release from jail is the parole regulation. But what if it's a mistake? What if they just said, oh, I thought you had a, I thought your removal proceedings terminated in your favor. Turn the key and let him out. We wouldn't then say, but the only legal way to let him out is by parole, so that must be what they did. Here, they purported to let him out under a different regulation. Under the wrong regulation. But the reason, the reason they let him out was they said, we have no idea when this case will terminate. His removal order is not reasonably foreseeable that we can execute this order. We're letting him out. And that is what the parole regulation talks about. It says when a person finds himself in this kind of limbo where there's no way to get them out, the release they get is on parole. Now, the class of people that Your Honor was alluding to with another question, you know, the people who perhaps sneak in, they're caught, they're put into removal proceedings and they get bond in the interim, that is not this case. Those people entered the country and they entered illegally. Mr. Baldy was brought into the country by law enforcement at the airport. And he is not in a situation that they're in. They are awaiting an order. He's had an order entered. And this regulation says when an order of removal has been entered. Why does that kind of person get to have a gun? Why would we think that Congress meant in this situation that if someone overstays a tourist visa, even innocently, and purchases a firearm, they're committing a crime. But someone who's been ordered removed from the country and is only here because the other country won't let him back in is allowed to have a firearm. That's the question. And Congress has not clearly spoken to it. The presumption in federal law is that possession of a firearm is lawful. And Congress has carved out exceptions to that presumption. Certain classes of people can't possess arms. Congress hasn't said aliens are categorically barred from possessing arms. It's carved out the categories. It says people who are unlawfully present. And I'm having trouble understanding how someone who has been ordered removed is lawfully present as opposed to present by necessity. Because in our opening brief at pages 20 to 21 and elsewhere in our reply, we cite the cases where individuals who receive parole status, aliens who are on parole status, are here lawfully. It is not a crime for them to be here. It is not illegal for them to be here. Now, this may be a gap that Congress may want to fill, but the way that the laws, the statutes, and this regulation have been written are exactly on point to Mr. Baldy's situation. Except that we do have the problem that he wasn't released pursuant to that regulation. He was released apparently because the government thought they could release him in a different – under a different category. Their reason for releasing him was incorrect, but their releasing him was required by law. It was clear to them, and they say this in the paperwork, that the government will file. They had no idea when they could execute this removal order. That regulation says in this case then, in that situation, the person must be paroled. We're not going to hold them indefinitely. We can't hold them indefinitely. So they get paroled. Your argument is that the only way they could – that he could be out and about is under the provision that you are citing us to. That's right. And my colleague – What exactly so I can get the number? Certainly. 8 CFR 212.5 E21. And it's in our briefs. Okay. And the regulation that they cited is what? 241.1. And if the Court will indulge me, I found some interesting history on that particular regulation. When it was promulgated in 2000, the original version, and I can cite this in my letter to the Court, the reference in the Federal Register, when the provision that the government is hanging its hat on came into being, there was a kind of Q&A in the Federal Reporter. It says, is this release or an order of supervision? One commentator asked whether release of an inadmissible alien constitutes release on parole, pursuant to 212.d.5, the thing we're relying on, or under an order of supervision, which is what the government is arguing. Reference to the parole statute and regulations is correct and will not be revised. An alien who's been denied admission continues to be an applicant for admission, and pending removal is subject to release in accordance with the parole authority. And I'll put this in a letter today if the Court would like. Okay. And what is that that you're reading from? This is the essentially notice of final rule when the regulation of the government is from the Federal Register. So the agency here is explaining why it's making this rule and it's answering questions. And one of the questions was, does this thing, you know, what about people who have been denied entry? Like, are they going to be treated as parolees or not? And they're saying, in effect, people in Mr. Balde's boat are getting parole. They are not getting this supervision that the government is trying to argue for, and that the government, frankly and candidly admits, does not apply to this case. The regulation that does apply is the parole regulation, and parole status is lawful status. And if this is something that can be changed by legislation, but as it stands today, Mr. Balde is not here unlawfully. He's been here for over a decade working, paying taxes, raising his family, and he has parole status. And again, finally, this does seem to be a rather challenging area of law and a very unique case. I would again invoke the rule of lenity if the Court is having difficulty. The rule of lenity says Congress has to talk in words that are clear, clear as a bell that the kind of conduct is illegal. And in this very unique case, Your Honor, I would say that Congress has not clearly said that someone in Mr. Balde's kind of Kafkaesque situation is plainly prohibited or plainly here unlawfully. Thank you. Thank you, Mr. Larson. We'll look forward to receiving that. Ms. Tarlow, if the government wants to respond to any argument that happens to accompany that, of course it may within a reasonable time, say five days after receiving it, something like that. Thank you. And you'll get us a copy of the document that you were referring to with Judge Lynch. Great. Thank you all. Interesting case, and we'll reserve decision until sometime after we hear from you. Thank you.